UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| JENNIFER D. GOLLIHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-00255-CEA-SKL |
| | ) | |
| SUBURBAN MFG, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

This case is filed pro se and without prepayment of fees by Plaintiff Jennifer Golliher ("Plaintiff"). On October 6, 2022, Plaintiff filed a complaint and an application to proceed *in forma pauperis* ("IFP") [Doc. 1 & Doc. 2]. On October 13, an Order was entered granting Plaintiff's IFP application [Doc. 7]. The Order explained, however, that Plaintiff's complaint failed to comply with applicable pleading standards and so the Clerk was directed not to issue process. Plaintiff was granted an opportunity to amend her complaint. Plaintiff was specifically warned not to incorporate the original complaint or IFP application by reference, and further that any failure to state a claim in an amended complaint would result in dismissal of this action. Plaintiff filed her Amended Complaint on November 14, 2022 [Doc. 8].

I.     STANDARDS

Under 28 U.S.C. § 1915(e)(2), the Court is responsible for screening all actions filed by plaintiffs seeking IFP status, and dismissing any action or portion thereof which is frivolous or malicious, fails to state a claim for which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997) (citations omitted), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007); *Johns v. Maxey*, No. 2:07-CV-238, 2008 WL 4442467 *1 (E.D. Tenn. Sept. 25, 2008) (Greer, J.)

(citations omitted). A frivolous claim is one that is based on "an indisputably meritless legal theory," or on allegations of "infringement of a legal interest which clearly does not exist." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *see also* 28 U.S.C. § 1915(e)(2)(B)(i).

The standard required by § 1915(e)(2)(B)(ii) to properly state a claim for which relief can be granted is the same standard required by Federal Rule of Civil Procedure 12(b)(6). *Brand v. Motley*, 526 F.3d 921, 924 (6th Cir. 2008); *accord Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citations omitted). The pleadings of pro se litigants must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nevertheless, pro se plaintiffs must abide by "basic pleading standards," and the role of the court is not to "conjure allegations on a litigant's behalf." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (quotation marks and citations omitted). "[P]ro se litigants are not relieved of the duty to develop claims with an appropriate degree of specificity." *Kafele v. Lerner, Sampson, Rothfuss, L.P.A*, 161 F. App'x 487, 491 (6th Cir. 2005).

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," otherwise it is subject to dismissal under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." A complaint need not state "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, it must contain more than mere "labels and conclusions, . . . a formulaic recitation of the elements," or "naked assertions . . . without further factual enhancement." *Id.* at 555, 557 (citations omitted). In order to survive a motion to dismiss, a complaint must contain sufficient facts to "state a claim to relief that is plausible on its face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678

(2009) (citing *Twombly,* 550 U.S. at 556). Stated differently, "the court must be able to draw a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *KSR Int'l Co. v. Delphi Auto. Sys.,* 523 F. App'x 357, 358-59 (6th Cir. 2013) (quoting *Iqbal,* 556 U.S. at 678).

## II. ANALYSIS

In her Amended Complaint, Plaintiff does not identify the entities or people she is attempting to sue in a caption or introductory section. From the body of the Amended Complaint, it appears Plaintiff is attempting to sue Suburban Manufacturing, where she works or worked. She also appears to be attempting to sue three individuals identified as Pam McMillon, "Amos," and James Thomas. McMillon and Amos appear to be Plaintiff's current or former coworkers. Plaintiff identifies Thomas as her current or former supervisor. Although in her original complaint she named Customer Driven Staffing as a defendant, that entity is not mentioned in the Amended Complaint.

In the Amended Complaint, Plaintiff alleges, in pertinent part:

> I worked on an assembly line @ Suburban Mfg. These lines move very fast and it's not a place where people should be standing close enough to hear what's going on. Or the nonsense others that's been there for several years that's laughing, talking bull crap about other race and religion. I came forth to upper management explaining the racism, nasty remarks, that was be[ing] said on a daily basis from Pam McMillon and Amos _____. I went to the supervisor James Thomas, on several occasions myself and my husband Mark Taylor and all he would say is that he would have to talk to Drew L. which was Human Resource manager and that kind of behavior had zero tolerance. My husband also talked to Drew in Human Resources and he was told that he and James would get to the bottom and take action.
>
> My husband Mark Taylor also worked on this same assembly line a year before I came to Suburban Mfg and he went through the same racist bull crap with these 2 individuals Pam _____ and Amos _____ and my husband is also Black. My husband asked to be put back in the Stamping department and they put him back in that department. These 2 individuals have caused to[o] many people to quit their jobs because the way these 2 individuals have treated

3

them.  This has went on for far to[o] long and they continue to get by with their actions.  Whoever at Suburban can say or accuse me of lying or making this up but God up above knows the truth and the ones at Suburban that would tell the truth about these 2 individuals is afraid or scared of losing their only income or jobs.  These 2 individuals are nothing but overgrown, adult bullies and racist people that shouldn't be allowed to treat others badly or with verbally abusive remarks.  No matter what race, color, religion or lifestyle they may choose.

     I myself was already dealing with my husband's health problems not knowing if he was gonna live or die.  But I got my butt out of bed @ 3:00 a.m. every morning and went to work.  Several days I worked on this assembly line and tears rolling down my cheeks because of the remarks from these 2 individuals.  On my breaks I went to my car, I didn't sit with anyone to gossip or talk about what I was dealing with.  But the people or employee's that would tell what they know, seen or heard, is afraid of losing their jobs.  Which is nonsense because these 2 racist individuals will continue to do what they have obviously done for a long time or for years.  How can we teach our children or grandchildren on racism, hate and bullying when grown adults to the same things in a place of employment?  And gets away with such things.

     So I solemnly make this promise; This will not be over until something is done about the way I was treated by Pam _____ and Amos _____ and James _____ and Suburban Mfg.  No human being should never, under no circumstances EVER have to be treated or tolerate others from this kind of abuse or hate remarks, or racist bull crap from anyone, no matter the situation.  I need answers or outcome SOON.

     I promise I will contact every: TV Station, Every Radio Station, Every organization, especially the NAACP and to anyone else that will listen to the truth.  I also promise, that I will hunt each and every person that has worked @ Suburban Mfg and <u>had to, or</u> endured any such hate, racism or other abusive remarks or bullying by these such individuals or this place of Employment.  My case will receive justice that it deserves . . .

. . . .

     My husband is black and yes I'm white.  We both are loving, caring and good people.  We believe all lives matter.  I myself, my husband will also do a polygraph any time to prove we are telling the truth.  And for the employee's that would tell about these racist

4

> individuals, I wouldn't want them to lose their jobs for telling the truth.
>
> I also would like to know how much money is in this for the employee's that was named in my lawsuit for keeping their mouths shut to save this business money.
>
> My message will be heard loud and clear. This case will be heard thru And these employee's and employment place will be held accountable for their actions and wrong doings.
>
> Every vendor or Everyone that has contracts or Every buyer will know how much hate, racism and bullying this Company or Business allows or accepts and tolerates from their employee's and management against other employee's. And does absolutely nothing to stop or end such behavior. <u>But instead cover it up by lies.</u>
>
> . . . .
>
> I have included messages shared with a coworker that spoke of knowledge of the 2 individuals and the way I was treated by them, management and Suburban Mfg. It's got the coworker's name and dates on them. But as you see in the messages, he's scared of losing his job or getting fired for telling the truth. So I'm going to attach these messages and I've also wrote out a 6 page letter, I'd appreciate it if you shared this information with the one's accusing me of lying or whatever they are trying to do. Because my case will get the satisfaction it deserves and for the people or persons trying so hard to cover up such behavior, this will go viral, I promise[.]
>
> . . . .

[Doc. 8 at Page ID # 33-40]. The message and six-page letter referenced in the last quoted paragraph were not included with the Amended Complaint. Further, although the original complaint requested payment "for all the actions that took place" [Doc. 2 at Page ID # 13], the Amended Complaint does not contain any request for damages or any other relief beyond that set forth above.

Plaintiff does not identify any particular basis for bringing her lawsuit in federal court, but it appears she is attempting to assert a claim or claims pursuant to Title VII of the Civil Rights Act. Title VII "make it 'an unlawful employment practice for an employer . . . to discriminate against

5

any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting 42 U.S.C. § 2000e-2(a)(1)). It thus prohibits racial discrimination by employers. Title VII also prohibits what is commonly referred to as a hostile work environment, which is said to occur when an employer permits a workplace to be "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (quotation marks and citations omitted).

First, any Title VII claims Plaintiff is attempting to assert against the individual defendants McMillon, Amos, and Thomas should be dismissed because "an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII." *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997); *see also id.* at 406 ("[W]e find that the statute as a whole, the legislative history and the case law support the conclusion that Congress did not intend individuals to face liability under the definition of 'employer' it selected for Title VII."). Plaintiff does not allege any facts in the Amended Complaint to suggest that any of these defendants meet the statutory definition of "employer." *See Reid v. Aubrey's Rest., Inc.*, No. 2:18-cv-90, 2018 WL 3650245, at *2 (E.D. Tenn. Aug. 1, 2018) ("An individual employee or supervisor is not considered an 'employer' under Title VII and therefore may not be held personally liable under Title VII. There is no dispute that Mr. Ward was simply another employee of Aubrey's Restaurant and not plaintiff's employer. Accordingly, he cannot be liable for any violation of Title VII." (citation omitted)).

Second, any Title VII discrimination claims should be dismissed. To state a claim for discrimination under Title VII, a plaintiff must show (among other requirements) "that he has suffered an adverse employment action; that is, he must establish that he has suffered a 'materially

6

adverse' change in the terms or conditions of employment because of the employer's action." *Nguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th Cir. 2000). Adverse employment actions "are typically marked by a 'significant change in employment status,' including 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010) (quoting *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 798 (6th Cir. 2004) (en banc)). The Amended Complaint does not allege any facts to support a finding that Plaintiff was subjected to an adverse employment action.

This leaves a potential claim for hostile work environment against Suburban Manufacturing, predicated on racial harassment.[1] Plaintiff must establish five elements for a hostile work environment claim: "1) she is a member of a protected class; 2) she was subjected to unwelcome racial harassment; 3) the harassment was based on race; 4) the harassment created a hostile work environment; and 5) the existence of employer liability." *Okojie v. Metro. Nashville Hosp. Auth.*, 584 F. Supp. 3d 543, 554 (M.D. Tenn. 2022) (citing *Hafford v. Seidner*, 183 F.3d

---

[1] The Amended Complaint does not attach an EEOC charge. "Before a plaintiff may sue under Title VII in federal court, she must first exhaust her administrative remedies, one component of which is timely filing a 'charge' with the EEOC." *Williams v. CSX Transp. Co., Inc.*, 643 F.3d 502, 507-08 (6th Cir. 2011) (citations omitted). Plaintiff's original complaint did attach a right-to-sue letter (although not the EEOC charge), indicating Plaintiff has pursued administrative relief as to *some* claim. Further, the exhaustion of administrative remedies with the EEOC is not a jurisdictional requirement under Title VII. *See Adamov v. U.S. Bank Nat'l Ass'n*, 726 F.3d 851, 856 (6th Cir. 2013). As such, it is subject to "waiver, estoppel, and equitable tolling." *James v. Quanta Servs., Inc.*, No. 18-11135, 2022 WL 1658843, at *3 (E.D. Mich. May 24, 2022) (quoting *McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002)). Accordingly, on the current record and applying the § 1915 IFP screening standards, I do not find dismissal is appropriate on this basis at this juncture.

506, 512 (6th Cir. 1999)).  Although a close call, I conclude that Plaintiff should be allowed to proceed on a claim for hostile work environment against Suburban Manufacturing.[2]

The first element can be established through a plaintiff's association with members of a protected class.  *See Barrett v. Whirlpool Corp.*, 556 F.3d 502, 512-13 (6th Cir. 2009).  Further, while a "white plaintiff generally does not have standing . . . solely for the purpose of vindicating the rights of minorities," it is also true that "plaintiffs who are not members of the protected class have standing to challenge racially discriminatory conduct in their own right when they are the direct target of the discrimination."  *Id.* at 516 (quoting *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1055 (9th Cir. 2002)).

With regard to the second, third, and fourth elements, the harassment must be severe or pervasive enough to create an "environment that a reasonable person would find hostile or abusive," and the victim must subjectively perceive it as such.  *Harris*, 510 U.S. at 21-22.  Title VII "does not set forth a general civility code for the American workplace and conduct must be extreme to amount to a hostile work environment."  *Bradley v. Arwood*, 705 F. App'x 411, 422 (6th Cir. 2017)  (quotation marks and citations omitted).  Courts determine "whether a hostile work environment has been created 'by looking at all the circumstances . . . includ[ing] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  *Id.* (quoting *Harris*, 510 U.S. at 23).  However, the second and third elements "limit[] the scope of this analysis: only harassment based on the plaintiff's race may be

---

[2] Plaintiff briefly and vaguely mentions religious-based commentary, but she does not allege any facts about her religion or about how the religious commentary contributed to the hostile work environment.  Accordingly, I limit my analysis to a race-based hostile work environment claim.  For clarity's sake, I find that to the extent Plaintiff has attempted to assert a religion-based hostile work environment claim, she has failed, and any such claim should be dismissed.

considered." *Williams v. CSX Transp. Co., Inc.*, 643 F.3d 502, 511 (6th Cir. 2011) (citing *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464 (6th Cir. 2000)).  Or, to the extent a plaintiff relies on association with a member of a protected class, "only harassment that specifically targeted those who associated with and advocated for [members of a protected class] will result in an actionable hostile work claim for such individuals." *Barrett*, 556 F.3d at 516.

As for the fifth element, when a plaintiff asserts employer liability based on coworker harassment, the plaintiff must how "that the employer 'knew or should have known of the charged [racial] harassment and failed to implement prompt and appropriate corrective action.'"  *Id.* (quoting *Hafford*, 183 F.3d at 513).

In her Amended Complaint, Plaintiff alleges she, a white woman, is married to a black man, which goes to the first element.  As for the fifth element, Plaintiff alleges she and her husband complained to her supervisor "on several occasions," but nothing was ever done to stop the behavior and offensive commentary by McMillon and Amos [Doc. 8 at Page ID # 33].

The second, third, and fourth elements make dismissal a close call.  Nevertheless, when Plaintiff's complaint is construed liberally and all reasonable inferences drawn in her favor, she has alleged that she was subjected to racist comments from McMillon and Amos on a daily basis, due at least in part to her marriage to a black man, who himself was also subjected to racist comments.  While she does not describe the content of the comments in any detail, she does allege the comments caused her to cry while on the job and to avoid fraternizing with other coworkers, which tends to show they were subjectively offensive.  She also alleges McMillon and Amos have caused a number of other employees to quit, and caused her husband to request to be moved to a different department, which tends to show the comments were objectively offensive.

It appears from her allegations that not all of the comments were directed at Plaintiff personally or other people in interracial marriages, and there is nothing to suggest that any single

9

comment or action was particularly severe or involved a physical threat. Nevertheless, Plaintiff has alleged they occurred on a daily basis, which, if true, tends to show the comments are sufficiently pervasive to create a hostile work environment, and potentially even humiliating. *Cf. Phillips v. UAW Int'l*, 854 F.3d 323, 328 (6th Cir. 2017) (holding that a "handful of offensive comments and an offensive meeting over a two year period . . . does not clear" the "relatively high bar for what amounts to actionable discriminatory conduct under a hostile work environment theory"). Finally, as the United States Court of Appeals for the Sixth Circuit has repeatedly observed: "Whether conduct is severe or pervasive is quintessentially a question of fact." *Jordan v. City of Cleveland*, 464 F.3d 584, 597 (6th Cir. 2006) (quotation marks and citation omitted); *Ault v. Oberlin College*, 620 F. App'x 395, 400 (6th Cir. 2015).

### III. CONCLUSION

For the reasons stated herein, I **RECOMMEND**[3]:

(1) the Court allow Plaintiff's Title VII claim against Suburban Manufacturing for hostile work environment based on racial harassment to proceed past the screening stage;

(2) all remaining claims, including any Title VII claims Plaintiff has asserted against the individual defendants McMillon, Amos, and Thomas, and any Title VII discrimination claims be **DISMISSED**;

(3) former named defendant Customer Driven Staffing be **TERMINATED** and any pending claims against that entity be **DISMISSED**;

---

[3] Any objections to this report and recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusory and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

The Clerk is **DIRECTED** not to issue process for service of the Amended Complaint until the District Judge has ruled upon this Report and Recommendation.

ENTER:

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE